## CONTINENTAL ILLINOIS NAT. BANK & TRUST CO. OF CHICAGO v. UNITED STATES.

### No. 45741.

United States Court of Claims.

Jan. 3, 1949.

Herman J. Galloway, of Washington, D. C. (King & King, of Washington, D. C., on the brief), for plaintiff.

Carl Eardley, of Los Angeles, Cal., and H. G. Morison, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN, and HOWELL, Judges.

JONES, Chief Judge.

The N. P. Severin Company, a partnership, under contract with the Government, furnished materials and performed certain work at a low-cost housing project known as Lockfield Gardens, in Indianapolis, Indiana. The lump-sum price was $2,440,921.

The partnership, with the approval of the defendant, entered into subcontracts and the subcontractors furnished certain materials and performed work on the project.

The plaintiff is the executor of the will of one of the parties and authorized liquidator of the company.

Plaintiff's action is to recover alleged damages to the partnership, and to recover on behalf of the subcontractors losses and damages due to alleged delays and other breaches of the contract by defendant, and to recover on behalf of the subcontractors for alleged extra work.

Each of the subcontracts contained the following provision:

"The contractor or subcontractor shall not in any event be held responsible for any loss, damage, detention or delay caused by the Owner or any other subcontractor upon the buildings; or delays in transportation, fire, strikes, lockouts, civil or military authority, or by insurrection or riot, or by any other cause beyond the control of Contractor or Subcontractor, or in any event for consequential damages."

Defendant moves the court for an order directing the commissioner of the court to omit from his report any findings of fact relating to claims on behalf of any subcontractor.

Defendant contends that, since by reason of the quoted provision in the subcontracts the prime contractor is not liable to the subcontractors for damages that may be caused them by the Government, the plaintiff cannot recover on behalf of the subcontractors for such damages.

In the case of Severin v. United States, 99 Ct.Cl. 435, certiorari denied 322 U.S. 733, 64 S.Ct. 1045, 88 L.Ed. 1567, in which this court construed an identical provision, it was held that the contractor could not recover on behalf of the subcontractor for damages caused by acts of the Government. This decision was followed in James Stew-art & Co. v. United States, 63 F.Supp. 653, 105 Ct.Cl. 284.

The defendant's motion, therefore, must be granted.

■ We reach this conclusion reluctantly because of the peculiar provisions of the instant contract. We adhere to the principles laid down in the cases of Merritt v. United States, 267 U.S. 338, 340, 45 S.Ct. 278, 69 L.Ed. 643; Severin v. United States, supra, and James Stewart & Co. v. United States, supra. See also United States v. Blair, 321 U.S. 730, 737, 64 S.Ct. 820, 88 L.Ed. 1039. These cases clearly state the principle that where the contractor in his contract with his subcontractor stipulates that the contractor shall not be responsible to such subcontractor for any loss, damage or delay caused by the Government or by any other subcontractor, the contractor may not recover from the Government on behalf of and for the benefit of the subcontractor. The reasoning behind these decisions is that the contractor is not damaged regardless of any hardship suffered by the subcontractor and that the subcontractor may not sue because there is no privity of contract between him and the Government.

However, in this case the specifications which, both in the invitation to bid and in the contract itself, are made a part of the contract, contain the following language:

"Sec. 28, Subcontracts:

"1. (See Art. 26 of the Contract.) The Contractor shall not award any work to any subcontractor without prior written approval of the Contracting Officer, and the terms of all subcontracts shall be subject to the prior approval of the Contracting Officer.

"2. The Contractor shall be as fully responsible to the Government for the acts and omissions of subcontractors and of persons either directly or indirectly employed by them, as he is for the acts and omissions of persons directly employed by him.

"3. The Contractor shall cause appropriate provisions to be inserted in all subcontracts relative to the work to bind subcontractors to the contractor by the terms of the General Conditions and other Contract Documents insofar as applicable to the work of subcontractors (particularly, without lim-

itation, as provided in Art. 26 of the Contract), and to give the Contractor the same power as regards terminating any subcontract that the Government may exercise over the Contractor under any provisions of the Contract Documents (see particularly Art. 25 and 26 of the Contract and Sec. 41 of these General Conditions).

"4. Nothing contained in the Contract Documents shall create any contractual relation between any subcontractor and the Government."

These provisions border on creating a privity of contract between the Government and the subcontractor. The subcontractor must be approved in writing and the terms of all subcontracts are made subject to the prior approval of the contracting officer. The subcontractor is also made subject to all the terms of the contract.

It is true that the specifications provide that nothing in the contract documents shall create a contractual relation between the subcontractor and the Government. But this is somewhat like the truant boy who, while admitting that he took, roasted and ate the chicken without the owner's permission, pleaded that he had no intention of depriving the owner of it—he didn't even know the owner. A mere statement that a contractual relation did not exist would be ineffective if all the elements of such a relation were otherwise present.

While the quoted provisions of the contract specifications come near to creating a privity of contract between the Government and the subcontractors, they are in our judgment not sufficient to do so and this court is therefore without jurisdiction under the Tucker Act, 28 U.S.C.A. § 1491 et seq., to consider the claims brought by the plaintiff for the benefit of the subcontractors.

Since it is now the general custom to sublet various phases of construction to firms who are specially equipped in particular lines, the ends of justice might be better served if a subcontractor were given a right to sue, either in his own name or through the contractor for his benefit, for damages sustained by him on account of wrongful acts of the Government in cases where the letting of subcontracts is approved by the Government. Congress alone, however, has authority, in its discretion, to grant such right.

In the state of the record, under the provisions of the law, and in the light of decisions heretofore rendered, we have no choice but to grant the motion.

The defendant's motion is therefore granted and the commissioner is instructed to omit from his report any findings of fact relating to claims on behalf of any subcontractor arising out of any alleged loss, damage, detention or delay caused by the defendant.

WHITAKER and LITTLETON, Judges, concur.

MADDEN, Judge (dissenting).

I am unable to agree with the court's decision. I recognize that the Severin and Stewart cases cited by the court fully support the decision. But I think that the decision in United States v. Blair, 321 U.S. 730, 737, 64 S.Ct. 820, 88 L.Ed. 1039, is, in effect, contrary to our decisions in those cases, and lays down a better rule. In the Blair case the court approved a judgment by this court in favor of a prime contractor, for losses suffered by a subcontractor because of erroneous requirements imposed by a Government inspector, which increased the subcontractor's labor costs. The court said [321 U.S. 730, 64 S.Ct. 824] :

"The court below made no finding, and the subcontract as introduced in the record does not expressly indicate, that respondent was liable to the subcontractor for the acts of the Government on which the claim was based.

"Clearly the subcontractor could not recover this claim in a suit against the United States, for there was no express or implied contract between him and the Government. Merritt v. United States, 267 U.S. 338, 45 S.Ct. 278, 69 L.Ed. 643. But it does not follow that respondent is barred from suing for this amount. Respondent was the only person legally bound to perform his contract with the Government and he had the undoubted right to recover from the Government the contract price for the tile, terrazzo, marble and soapstone work whether

that work was performed personally or through another. This necessarily implies the right to recover extra costs and services wrongfully demanded of respondent under the contract, regardless of whether such costs were incurred or such services were performed personally or through a subcontractor. Respondent's contract with the Government is thus sufficient to sustain an action for extra costs wrongfully demanded under that contract. Hunt v. United States, 257 U.S. 125, 42 S.Ct. 5, 66 L. Ed. 163."

This language and decision seem to me to leave nothing of our doctrine expressed in the Severin and Stewart cases. And although I wrote the court's opinion in the Severin case, I should be glad to see it overruled, for, upon further consideration, I think it introduces to large an element of the accidental into our decisions in these frequently recurring cases involving subcontractors. I think that in most of the suits involving wrongs committed by Government agents to the harm of subcontractors, there would be no ground on which the prime contractor would, in fact, be liable to the subcontractor. Yet we consistently allow recovery in such cases, without first trying the hypothetical suit of the subcontractor against the prime contractor. We do not allow recovery because we presume the existence of such liability. Such a presumption would, I think, be contrary to the truth in most cases. In the Severin and Stewart cases we did not allow recovery, not because the actual situation with reference to liability was different, but because the prime contractor had inserted in his subcontracts, supererogatorily, an express provision relieving him from liability for acts of the Government.

Our distinction, then, depends upon the presence or absence of language in the subcontract which has no other practical utility than the wholly unforeseen one of making it impossible for a subcontractor to be compensated for wrongs suffered at the hands of the Government in the same circumstances in which other subcontractors, absent the language, are given relief. I therefore think that the distinction should be discarded, and the prime contractor treated in all cases as the owner of a right to have the Government comply with its contract, which right he holds in trust for those whom he brings into the situation by giving them interests in such compliance as subcontractors. Whether or not in his creation of this trust relation he expressly makes himself exempt from liability for violations by the Government of the contract should have no effect upon his right, as the owner of the rights under the contract, to enforce it for the benefit of those harmed by its breach.

I would overrule the Severin and Stewart cases and dismiss the Government's motion to limit findings of fact.

HOWELL, Judge, concurs in the foregoing.