**TENANT AFFAIRS BOARD, et al., Appellants,**

v.

**Samuel R. PIERCE, Jr., et al., Appellees.**

**No. 82–2332.**

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 10, 1982.

Decided Nov. 30, 1982.

Robert M. Sears, Clayton, Mo., for appellant.

Mark C. Rutzick, Special Litigation Counsel, Federal Programs Branch, Civ. Div., Washington, D.C., for Pierce.

Donald Crotzer, Steinberg & Crotzer, Clayton, Mo., for St. Louis Housing and Pearson.

Before HEANEY, JOHN R. GIBSON and FAGG, Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

Appellant Tenant Affairs Board appeals from the denial of its request for preliminary injunction [1] and moves for injunction pending appeal pursuant to Rule 8(a), Fed. R.App.P. Tenant sought the injunction following an increase in rent for public housing units imposed by the St. Louis Housing Authority following adoption of regulations by the Department of Housing and Urban Development (HUD) requiring such increases. Tenant's claim raises questions concerning the constitutionality of 42 U.S.C. § 3535(*o*), which allows either the Senate Committee on Banking, Housing and Urban Affairs or the House Committee on Banking, Finance and Urban Affairs to delay the effective date of a HUD regulation for 90 days by adoption of a disapproval resolution. Because we affirm the denial of the preliminary injunction and deny the motion

---

1. By The Honorable H. Kenneth Wangelin, United States District Judge for the Eastern District of Missouri.

for injunction pending appeal, we need not reach these issues.

On August 13, 1981 the President signed the Omnibus Budget Reconciliation Act of 1981, which required an increase in rent paid by tenants in public housing from 25% to 30% of the tenants' monthly adjusted income. 42 U.S.C. § 1437a, Pub.L. 97–35, Title III § 322(a), 95 Stat. 400.[2] On May 4, 1982 HUD published an interim final rule incorporating the new 30% statutory rent ceiling. 47 Fed.Reg. 19120, 19123 (1982). The rule was transmitted to the committees of the House and Senate, as required by 42 U.S.C. § 3535(o)(1). On June 2, 1982 the House Committee on Banking, Finance and Urban Affairs reported out a joint resolution of disapproval, as provided for in 42 U.S.C. § 3535(o)(3), the effect of which would defer the effective date of the rule for 90 calendar days from the date of the resolution, September 1, 1982.

HUD determined to put the regulation into effect before September 1. It had been advised by the Department of Justice that the 90-day waiting period of 42 U.S.C. § 3535(o)(3) was unconstitutional because it allowed a committee of one House of Congress to impose illegally binding requirements on the Executive Branch. The Secretary determined that it was his obligation to implement the statutory directives and on July 16, 1982 a notice was published setting an effective date for the new rule of August 1, 1982. 47 Fed.Reg. 30969 (1982).

Beginning October 1, 1982, in accordance with the HUD regulation, the St. Louis Housing Authority began to implement the rental increases in public housing units under its control. On October 29, 1982 Tenant brought this action for injunction, seeking to block the rental increase. After conferences with the parties, on November 2, 1982 the district court entered its order denying the request for preliminary injunction and made the following finding:

The Court did, however, indicate its willingness to entertain a motion by the parties to enjoin what it perceived to be the potentially irreparable elements of plaintiffs' injury—that is, any eviction procedures taken by defendant for non-payment of rent or implementation of so-called "black marks" on the records of tenants on file at the Housing Authority. The parties individually and severally refused to acquiesce in the implementation of such partial relief. The balance of plaintiffs' harm (having to pay conceivably illegal rent rates) is easily computable and clearly compensable by money damages. Consequently, this Court rejects the form of the relief requested in plaintiffs' temporary restraining order as overbroad and unwarranted by the facts presented.

. . . .

The court thus finds that plaintiffs' complaint and supporting affidavits fail to establish immediate irreparable injury if preliminary relief is not granted and, therefore, plaintiffs' request for a preliminary injunction should be denied.

The appeal and motion for injunction pending appeal followed.

■ Our scope of review of denial of preliminary injunctions is limited. As we have said:

Although the district court applies a stringent standard in deciding the appropriateness of injunctive relief, the standard of appellate review is simply whether the issuance of the injunction, in light of the applicable standard, constituted an abuse of discretion.

*Lynch Corp. v. Omaha National Bank,* 666 F.2d 1208, 1211 (8th Cir. 1981).

The inquiry before the district court involved consideration of the four standards for grant of a preliminary injunction set forth in *Dataphase Systems, Inc. v. C L Systems, Inc.,* 640 F.2d 109, 114 (8th Cir. 1981):

In sum, whether a preliminary injunction should issue involves consideration of (1) the threat of irreparable harm to the

---

**2.** The rent could not be increased more than 10% in twelve calendar months. Pub.L. 97–35, Title III § 322(a) Sec. 3(i)(1). See notes to 42 U.S.C. § 1437a.

movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest.

The district court here concerned itself only with the first of the four standards, the threat of irreparable harm to the movant. It made no ruling on the other three considerations.

The record before the district judge at the time of his ruling consisted of the affidavits of tenants Oliver and Cooper. Both stated in generalized terms that the increases in the amount of rent would cause their family extreme hardship and would require them to divert money which is otherwise now being spent on food, clothing and other necessities for themselves and their children.[3]

The record before the district judge on the question of possible eviction because of nonpayment is not clear, but during argument counsel for the Housing Authority stated that because of procedural requirements there could be no evictions until between March 1 and June 1, 1983.

Tenant argues that the recent decision of the District Court for the Southern District of New York in *Williams v. Pierce*, (S.D.N.Y. Oct. 29, 1982), determined that under similar circumstances there was a showing of irreparable harm. In *Bloodworth v. Oxford Village Townhouses, Inc.*, 377 F.Supp. 709 (N.D.Ga., 1974), the court also found irreparable harm in a public housing rent increase of 50% as it would be tantamount to eviction. Both district courts were, of course, empowered to make such factual findings. The court's lengthy opinion in *Pierce* reveals that substantially more evidence on the issue of irreparable harm had been presented. The factual distinctions between this case and *Bloodworth* are evident. These opinions do not assist us in determining whether the district court abused its discretion with respect to Tenant's claim.

█ On the basis of the record before the district judge, we cannot conclude that he abused his discretion in finding that there had been no showing of irreparable harm.

The fact that the increases in rent are mandated by Congress in 42 U.S.C. § 1437a was not a subject of specific finding by the district court. This bears upon the issue of irreparable harm and whether a citizen or group of citizens can claim irreparable harm from an act of Congress so that a court may consider equitable relief. In this respect we recognize that the statute in question provides:

The Secretary's actions and determinations and the procedures for making determinations pursuant to this subsection shall not be reviewable in any court.

Pub.L. 97–35, § 322(i)(3); 95 Stat. 357, 400. See notes to 42 U.S.C. § 1437a.

The district court did not reach the other three standards for issuance of a preliminary injunction, and on the basis of the record presented to us we believe that we should not make conclusions on these standards. While it is possible that the three issues can be ruled as a matter of law on the record before us, we feel that it is more appropriate that the record be fully developed.

The merits of plaintiff's claim and defendant's response present questions concerning the constitutionality of 42 U.S.C. § 3535(*o*), and its provisions for delayed effectiveness of regulations of HUD. Similar statutes are now before the Supreme Court in *Consumer Energy Council of America v. F.E.R.C.*, 673 F.2d 425 (D.C.Cir. 1982), *appeals pending,* Nos. 81–2008, 81–2020, 81–2151, and 81–2171, and *Chadha v. Immigration and Naturalization Service,*

---

**3.** The Oliver increase in rent was from $50 per month to $55 per month. The Coopers' increase was from $179 per month to $307 per month, but it has been admitted by both defendants that this increase was in error and that the increase should have been to $204, with a portion based on increase in income. Defendant Housing Authority states that this and any other rent increases erroneously computed will be corrected without the necessity of administrative appeals on the part of aggrieved tenants.

634 F.2d 408 (9th Cir.), *cert. granted,* 454 U.S. 812, 102 S.Ct. 87, 70 L.Ed.2d 81, *restored to calendar for reargument,* —— U.S. ——, 102 S.Ct. 3507, 73 L.Ed.2d 1382 (U.S. 1982). We do not feel that we should reach these questions until the case has come before us on a record that fully and adequately presents the issues.

Accordingly, we affirm the order of the district court denying the preliminary injunction. We conclude that the most expeditious method for termination of this litigation is to remand proceedings to the district court where the parties may, if they choose, pursue their efforts to obtain a ruling on a motion for permanent injunction and then, if the aggrieved party desires, the issue may be returned to this court. Should the litigation continue, any appeal from an order dealing with the application for permanent injunction will be given expedited hearing.

The order of the district court is affirmed.